UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PIETRO CAMPANELLA,<br><br>               Plaintiff,<br><br>     -against-<br><br>The EXONE COMPANY, S. KENT ROCKWELL, JOHN HARTNER, JOHN IRVIN, GREGORY F. PASHKE, WILLIAM F. STROME, ROGER W. THILTGEN, BONNIE K. WACHTEL, and PAUL A. CAMUTI,<br><br>               Defendants. | Case No.: _____21-1302_____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Pietro Campanella, by Plaintiff's undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This is an action brought by Plaintiff against The ExOne Company ("ExOne" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of ExOne by Desktop Metal, Inc. ("Desktop Metal").

2. On August 11, 2021, Desktop Metal, Texas Merger Sub I, Inc., a Delaware corporation

and a wholly owned subsidiary of Desktop Metal ("Merger Sub I"), Texas Merger Sub II, LLC, a Delaware limited liability company and a wholly owned subsidiary of Desktop Metal ("Merger Sub II") and ExOne entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub I will merge with and into ExOne, with ExOne surviving the merger as a wholly owned subsidiary of Desktop Metal (the "First Merger"). The Merger Agreement also provides that, immediately following the effective time of the First Merger (the "Effective Time"), ExOne, as the surviving corporation of the First Merger, will merge with and into Merger Sub II (the "Second Merger," and together with the First Merger, the "Mergers"), with Merger Sub II surviving the Second Merger and continuing as a wholly owned subsidiary of Desktop Metal (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, ExOne's common stock shareholders will be entitled to receive (i) $8.50 in cash (the "Cash Consideration") and (ii) a number of shares of Desktop Metal Class A common stock equal to the "Exchange Ratio" (the "Exchange Ratio" and, together with the Cash Consideration, the "Merger Consideration") provided, however that such cash and stock merger consideration is subject to further adjustment. The exchange ratio will be calculated based on two factors: the "average stock price" of Desktop Metal Class A common stock over a twenty day period and a 10% bilateral collar. The exchange ratio is subject to a 10% bilateral collar as follows: (a) if the average stock price of Desktop Metal's Class A common stock is greater than or equal to $9.70, the exchange ratio will be 1.7522, (b) if the average stock price is less than $9.70 and greater than $7.94 per share, the exchange ratio of 1.9274 will be modified by multiplying such exchange ratio by the quotient of $8.82 divided by the average stock price and (c) if the average stock price is less than or equal to $7.94, the exchange ratio will be 2.1416. The merger consideration will also be subject to adjustment to ensure that (a) the stock consideration in the Mergers is not less than 45% of the total consideration in the Mergers, as determined for U.S. federal income tax purposes, and (b) the number of shares of Desktop Metal Class A common stock to be issued in the Mergers

does not exceed 19.9% of the issued and outstanding of shares of Desktop Metal Class A common stock.

4.     As of August 11, 2021, ExOne stockholders were estimated to receive total consideration of $575 million, consisting of $192 million in cash consideration and $383 million in share consideration of Desktop Metal common stock, subject to a collar mechanism on the share consideration component; the Merger Consideration was worth approximately $17.00 in share-based consideration and the total consideration to be $25.50 for each share of ExOne common stock exchanged in the Mergers, subject to the collar mechanism.

5.     On or about September 15, 2021, in order to convince ExOne's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.     In particular, the Registration Statement contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by ExOne's financial advisors, Stifel Nicolaus & Company, Incorporated ("Stifel" or the "Financial Advisors") regarding the Proposed Transaction.

7.     The Proposed Transaction is expected to close in the fourth quarter of 2021 and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise all corporate voting rights.

8.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to ExOne's public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, ExOne's common stock trades on the Nasdaq Global Select Market ("Nasdaq"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

12.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

of ExOne common stock.

13.    Defendant ExOne is a Delaware corporation headquartered in North Huntingdon, Pennsylvania.  ExOne's common stock trades on the Nasdaq under the ticker symbol "XONE."

14.    Defendant S. Kent Rockwell ("Rockwell") is, and has been at all relevant times, Chairman of the Board of Directors of the Company.

15.    Defendant John Hartner ("Hartner") is, and has been at all relevant times, the Chief Executive Officer and a director of the Company.

16.    Defendant John Irvin ("Irvin") is, and has been at all relevant times, a director of the Company.

17.    Defendant Gregory F. Pashke ("Pashke") is, and has been at all relevant times, a director of the Company.

18.    Defendant William F. Strome ("Strome") is, and has been at all relevant times, a director of the Company.

19.    Defendant Roger W. Thiltgen ("Thiltgen") is, and has been at all relevant times, a director of the Company.

20.    Defendant Bonnie K. Wachtel ("Wachtel") is, and has been at all relevant times, a director of the Company.

21.    Defendant Paul A. Camuti ("Camuti") is, and has been at all relevant times, a director of the Company.

22.    The Defendants identified in paragraphs 14 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     ExOne is a publicly traded Delaware Corporation headquartered in Pennsylvania. ExOne's Business primarily consists of manufacturing and selling 3D printing machines and printing products to specification for its customers using its global installed base of 3D printing machines. ExOne's machines serve direct and indirect applications. Direct printing produces a component; indirect printing makes a tool to produce a component. ExOne offers its pre-production collaboration and print products for customers through its network of ExOne Adoption Centers. ExOne also supplies the associated materials, including consumables and replacement parts, and other services, including training and technical support, that are necessary for purchasers of its 3D printing machines to print products.

24.     ExOne's common stock is listed on the Nasdaq under the symbol "XONE."

25.     ExOne is positioned for continued, sustained economic growth in the coming years.

26.     Indeed, along with the financial results that ExOne released in May 2021, less than three months before the Proposed Transaction was announced, ExOne issued a press release entitled *The ExOne Company Reports First Quarter 2021 Results*, which stated in part:

> First quarter revenue of $13.0 million, including record quarterly recurring revenue of $8.1 million, up 15% year-on-year
> Record backlog of $47.8 million increased 41% year-on-year and 21% sequentially
> Total liquidity increased to $137.3 million at March 31, 2021
> Reaffirming 2021 full year revenue growth expectations of 15% – 25% based on record backlog, new product launches and improving macroeconomic conditions
>
> NORTH HUNTINGDON, Pa.--(BUSINESS WIRE)--May 17, 2021-- The ExOne Company (Nasdaq: XONE) ("ExOne" or the "Company"), the global leader in industrial sand and metal 3D printers using binder jetting technology, today reported financial results for the first quarter ended March 31, 2021. "The ExOne team is pleased to report record levels of both recurring revenue and machine order backlog, which shows the strength of our product offerings, adoption model, and momentum," said John Hartner, ExOne's CEO. "While our first quarter results reflect the difficult operating environment that continues to persist as a result of COVID-19, we are seeing signs of an economic rebound, particularly in the U.S. market where we saw a higher concentration of sales and backlog growth during the first

quarter. We look forward to entering the post-pandemic period with new tailwinds as manufacturers look to de-risk supply chains and improve the sustainability of their products with new designs that require our industrial 3D printing solutions to execute."

Other highlights for the year to-date are also driving confidence at ExOne: The launch of the ExOne Metal Designlab™, through an exclusive partnership with Rapidia, has diversified and strengthened our metal portfolio beyond binder jetting to include our first office-friendly bound metal 3D printer.

ExOne's strength as the market leader in binder jetting materials continues to intensify, with the recent announcement that reactive materials such as aluminum and titanium will be printable on a controlled-atmosphere model of the X1 160Pro metal system, the market's largest metal binder jetting platform, in 2022.

A significant expansion of the global sales distribution network, including four new experienced additive sales partners with more than 60 offices in the U.S. and Canada, and a doubling of the sales network in Greater China. The majority of the new sales partners will be focused on metal system sales.

Increased investment in innovation, continuous improvement, manufacturing capacity, and training surrounding ExOne's production-ready metal 3D printers. These investments include a 15% increase in the global workforce in 2021 to support a significant shift in manufacturing mix to a higher percentage of metal units and to accelerate production of metal printers in an effort to more quickly convert backlog to revenue and meet growing customer demands.

…

ExOne CEO John Hartner commented, "With signs of a broader economic recovery on the horizon, a record contractual backlog and expanded product portfolio and distribution network, we see the remainder of 2021 as the beginning of our next phase of growth. While there are still some remaining execution challenges as a result of COVID-19, particularly in Europe and Asia, we feel confident that our operating plan for 2021 is well supported. In addition, our improved liquidity position gives us the ability to strategically invest in additional growth opportunities."

27.     Moreover, on August 11, 2021, the same day the Merger Agreement was announced, ExOne issued a press release entitled, *The ExOne Company Reports Second Quarter 2021 Results*, which stated in part:

Record second quarter revenue of $18.8 million increased 69% year-on-year and 44% sequentially

Second quarter revenue includes an all-time quarterly record for recurring revenue of $8.3 million, up 34% year-on-year, driven by material sales
Record backlog of $48.7 million increased 27% year-on-year
ExOne enters into definitive agreement to be acquired by Desktop Metal, Inc.

NORTH HUNTINGDON, Pa.--(BUSINESS WIRE)--Aug. 11, 2021-- The ExOne Company (Nasdaq: XONE) ("ExOne" or the "Company"), the global leader in industrial sand and metal 3D printers using binder jetting technology, today reported financial results for the second quarter ended June 30, 2021.
…

"The ExOne Team is proud to deliver a record second quarter revenue result, driven by market momentum we continue to see for our portfolio of products, which we believe is the strongest in the company's history and also in the binder jet marketplace, as well as an all-time high in both quarterly recurring revenue and backlog," said John Hartner, ExOne's CEO. "We're also benefiting from secular trends that we believe will continue to lift ExOne long into the future, such as a desire to lightweight cars and aircraft for sustainability benefits. While COVID-19 continues to cast uncertainty over the markets we serve, we also see early signs of an economic restart, led by the U.S. market, and a shift in manufacturing approach as a direct result of the pandemic that also benefits ExOne. We're talking to an increasing number of manufacturers who are looking to de-risk and shorten supply chains in a way that supports increased interest in additive manufacturing technologies such as binder jetting for more localized production."

28.     Thus, the Proposed Transaction comes at a time when ExOne's future success was not fully reflected by its share price.  The Proposed Transaction will "compensate" ExOne's public stockholders with Merger Consideration that fails to adequately compensate them for the intrinsic value of their shares.

29.     Despite ExOne's intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives ExOne's public shareholders of the ability to partake in the Company's individual growth and instead cashes them out in part and dilutes the value of their shares with an inadequate interest in Desktop Metal.  The Individual Defendants breached their fiduciary duties owed to ExOne's shareholders by agreeing to the Proposed Transaction for the unfair Merger

Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate Merger Consideration while Company insiders receive millions of dollars in severance payments if they are terminated, retention bonuses if they stay employed, and accelerated vesting of their restricted stock units.

**The Announcement of the Proposed Transaction**

30.    On August 11, 2021, ExOne issued a joint press release to announce the Proposed Transaction, which stated in part:

> **Desktop Metal to Acquire ExOne, Cementing Its Leadership in Additive Manufacturing for Mass Production**
>
> August 11, 2021
>
> Acquisition Joins Two Additive Manufacturing Pioneers and Complementary Technology Platforms to Further Accelerate the Adoption of Additive Manufacturing 2.0
> BOSTON & NORTH HUNTINGDON, Pa.--(BUSINESS WIRE)-- Desktop Metal, Inc. (NYSE: DM) ("Desktop Metal") and The ExOne Company (NASDAQ: XONE) ("ExOne") announced today they have entered into a definitive agreement pursuant to which Desktop Metal will acquire all of the issued and outstanding shares of ExOne common stock. Under the terms of the agreement, ExOne shareholders will receive $8.50 in cash and $17.00 in shares of Desktop Metal common stock for each share of ExOne common stock, for a total consideration of $25.50 per share, representing a transaction value of $575 million, subject to a collar mechanism as described below and implying a 47.6% premium to the closing price of ExOne's common stock on August 11, 2021 and a 43.9% premium based on the 30-day average closing price of ExOne common stock. The transaction value also implies an acquisition multiple of 6.4x 2021 consensus revenue estimates for ExOne.
>
> "We are thrilled to bring ExOne into the DM family to create the leading additive manufacturing portfolio for mass production," said Ric Fulop, Founder and CEO of Desktop Metal. "We believe this acquisition will provide customers with more choice as we leverage our complementary technologies and go-to-market efforts to drive continued growth. This transaction is a big step in delivering on our vision of accelerating the adoption of additive manufacturing 2.0."
>
> "We are excited to join forces with Desktop Metal to deliver a more sustainable future through our shared vision of additive manufacturing at high production volumes," said John Hartner, CEO of ExOne. "We believe our complementary platforms will better serve customers, accelerate adoption of green technologies,

and drive increased shareholder value. Most importantly, our technologies will help drive important innovations at meaningful
production volumes that can improve the world."

More and more businesses turning to additive manufacturing expect solutions that address all of their requirements across speed, cost, resolution, and part size. The acquisition of ExOne extends Desktop Metal's product platforms with complementary solutions to create a comprehensive portfolio combining throughput, flexibility, and materials breadth while allowing customers to optimize production based on their specific application needs. By
combining ExOne's direct sales force with Desktop Metal's global distribution network of over 200 channel partners, the combined company will enable broader access to additive manufacturing solutions for businesses of all sizes while delivering increased materials innovation to provide customers with more choice and drive new application discovery.

"Today is a game-changing moment for the additive manufacturing community," said Kent Rockwell, Chairman of ExOne. "I see incredible opportunity for our customers in working with Desktop Metal and look forward to supporting this new and combined business."
Transaction Details:

Under the terms of the agreement, at closing, ExOne stockholders will receive total consideration of $575 million, consisting of $192 million in cash consideration and $383 million in share consideration of Desktop Metal common stock, subject to a collar mechanism on the share consideration component described below.
The share consideration component is subject to an exchange ratio adjustment if Desktop Metal's 20-day volume weighted average price (VWAP) 3 days prior to closing is between $7.94 and $9.70. If the 20-day VWAP exceeds the higher end of that range, the exchange ratio will be fixed at 1.7522 per share, and if the 20-day VWAP goes below the lower end of that range, the exchange ratio will be fixed at 2.1416 per share. The final number of
Desktop Metal shares estimated to be issued on a fully diluted basis will range between approximately 39.5 million and 48.3 million shares at closing. Upon closing of the transaction, current Desktop Metal shareholders will own between 85 and 88% and current ExOne shareholders are expected to own between 12 and 15% of the combined company, respectively.

Kent Rockwell, ExOne's Chairman of the Board of Directors and largest shareholder, has entered into a Support Agreement in which he will vote his 4.2 million shares in favor of the transaction.
The transaction, which has been unanimously approved by the Board of Directors of ExOne, is expected to close in the fourth quarter of 2021, subject to the approval of ExOne shareholders and satisfaction of customary closing conditions, including applicable regulatory approvals.

Credit Suisse Securities (USA) LLC is acting as exclusive financial advisor and Latham & Watkins is acting as legal advisor to Desktop Metal. Stifel is acting as

exclusive financial advisor and McGuireWoods LLP is acting as legal advisor to ExOne.

**The Preclusive Deal Protection Devices**

31.     To the detriment of the Company's public shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

32.     The Merger Agreement contains restrictive "no-shop" provisions that prohibit the members of the Board from soliciting proposals relating to alternative offers or business combinations.

33.     The "no-shop" provisions strictly prohibit, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

34.     The Merger Agreement ("ExOne Acquisition Proposals") contains a restrictive "no-shop" provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

35.     The Merger Agreement strictly prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

36.     Among other things, the Merger Agreement also requires the Board to provide Desktop Metal with written notice of any inquiry that could reasonably expected to lead to an Acquisition Proposal, and further requires that the Board keep Desktop Metal reasonably informed, on a current basis, of the continuing status thereof, including the material terms and conditions and any material changes, so that Desktop Metal may negotiate with ExOne following Desktop Metal's receipt of the notice so that Desktop Metal can adjust the terms and conditions of the Merger Agreement so that the

11

Acquisition Proposal ceases to be a Superior Proposal.

37.     In addition, the Merger Agreement provides that the Company will be required to pay to Desktop Metal a termination fee of $11,500,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

38.     Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public shareholders' ability to disapprove the Proposed Transaction.

39.     The aggregate effect of the preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction and the flawed and conflicted sales process pursuant to which the Proposed Transaction was negotiated, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

40.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**Insiders' Interests in the Proposed Transaction**

41.     ExOne insiders are the main beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured exclusive benefits for themselves from the Proposed Transaction.

42.     On August 11, 2021, in connection with the Merger Agreement, the ExOne Board approved special cash retention awards for thirty-eight employees, with an aggregate amount of approximately $2.5 million, including awards to ExOne's named executive officers John Hartner, Rick Lucas and Douglas Zemba. The special cash retention awards will vest and be payable by ExOne to each of the employees who received such a retention award if he or she remains continuously

employed with ExOne through May 11, 2022 and the Mergers close before that date. *See*, Registration Statement, 129.

43.     John F. Hartner, Douglas D. Zemba and Rick Lucas participate in the ExOne Severance Plan. Mr. Hartner is a Tier I employee and Mr. Zemba and Mr. Lucas, are Tier II employees. The ExOne Severance Plan provides certain "double trigger" benefits to participants in the event a change of control occurs during the protection period and any of the participants either (i) has a voluntary termination of employment for good reason, or (ii) has an involuntary termination of employment, other than for death, disability or cause. The protection period began on the day the Merger Agreement was signed and ends on the earlier of (i) the date that is 18 months following the Effective Time or (ii) the public announcement that the Mergers will not take place. If Mr. Hartner is terminated during the protection period he will be entitled to receive a one-time cash payment equal to two and a half times his annual base salary and certain health and welfare benefits for 18 months after termination. If Mr. Zemba or Mr. Lucas are terminated during the protection period each will be entitled to receive a one-time cash payment equal to two times his annual base salary and certain health and welfare benefits for 18 months after termination. ExOne's other executive officer participates in the ExOne Severance Plan as a Tier II employee and would be entitled to the same nature of benefits as Mr. Zemba and Mr. Lucas as described above.

44.     Additionally, the ExOne Severance Plan provides that upon the occurrence of a change of control, 50% of any unvested stock options, restricted stock or other equity-based awards of ExOne held by a participant will immediately vest and become exercisable. The remaining 50% of such unvested awards held by the participant will vest and become exercisable pursuant to the terms of the awards, or immediately upon (i) voluntary termination of the participant's employment for good reason, or (ii) involuntary termination of the participant's employment, other than for death, disability or cause, if such termination occurs within 18 months following a change of control.

45.     Additionally, ExOne's named executive officers could receive considerable cash severance payments, namely golden parachute compensation, if they are terminated in connection with the Merger. For example, John F. Hartner stands to receive $6,164,944 in golden parachute compensation.

46.     Finally, members of the Board of Directors have Non-COC Restricted Stock Awards, which will vest. *See*, Registration Statement, pg. 106. ("At the Effective Time, each Non-COC ExOne Restricted Stock Award that is outstanding, will vest as of the Effective Time and will be cancelled, with the holder of such Non-COC ExOne Restricted Stock Award becoming entitled to receive the merger consideration in respect of each ExOne Share subject to such Non-COC ExOne Restricted Stock Award."):

**Non-Employee Director Equity Award Summary Table**

| Non-Employee Directors | Unvested Restricted Stock Awards[#] | Value of Unvested Restricted Stock Awards($)[1] |
|---|---|---|
| S. Kent Rockwell | 5,000 | $ 118,700 |
| Paul A. Camuti | 4,000 | $ 94,960 |
| John Irvin | 5,000 | $ 118,700 |
| Gregory F. Pashke | 5,000 | $ 118,700 |
| William F. Strome | 5,000 | $ 118,700 |
| Roger Thiltgen | 5,000 | $ 118,700 |
| Bonnie K. Wachtel | 5,000 | $ 118,700 |

**The Registration Statement Omits Material Information**

47.     On or about September 15, 2021, in order to convince ExOne's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Registration Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

48.     The special meeting of ExOne's shareholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration

Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

49.     Specifically, the Registration Statement omits two types of material information: (i) information regarding the background of the transaction, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

**A.  The Registration Statement Omits Material Information Regarding the Background of the Transaction**

50.     The Registration Statement fails to reference the May 12, 2021 shareholder vote regarding an amendment to the Company's Certificate of Incorporation to specifically provide for stockholder removal of directors either with or without cause. The amendment was not approved, as it did not receive the vote of at least 75% of the voting power of all outstanding shares of the Company's common stock.

51.     Page 76 of the Registration statement says ExOne entered into a non-disclosure agreement with Company X, but does not disclose whether the non-disclosure agreement included standstill provisions.

52.     Page 77 of the Registration Statement says ExOne's Financial Advisors did outreach to Company Y on July 5, but the Registration Statement fails to include a description of Company Y or any indication that the Transaction Committee authorized this outreach. Instead, it simply states that they discussed "the potential to conduct a market check with other parties and the likelihood of another party coming into the process" at the July 2 meeting. *See*, Registration Statement, 77.

**B.  The Registration Statement Omits Material Information Regarding the Fairness Analysis**

53.     The Registration Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying

assumptions that underpin the fairness opinion. Specifically, the Registration Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations. Without this information, shareholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion. The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them. Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

54.     First, with respect to the ExOne Projections described on Page 90, the Registration Statement omits critical financial projections, namely the cash flow projections (the "Cash Flow Projections"). *See,* Registration Statement, 90.

55.     With respect to the Desktop Metal Projections described on Page 93, the Registration Statement also omits critical financial projections, namely the cash flow projections. *See*, Registration Statement, 93.

56.     With respect to the Pro Forma Combined Company Discounted Cash Flow Analysis described on Page 93-94, the Registration Statement also omits critical financial projections, namely the range of indications of the present value of unlevered free cash flows for the pro forma combined company. *See*, Registration Statement, 93-94.

57.     With respect to Desktop Metal's projections as compared to ExOne's projections, Desktop Metal's are noticeably more aggressive:

ExOne:

| (in millions) | Forecast Year Ended December 31, | | | | |
| | 2021E | 2022E | 2023E | 2024E | 2025E |
| Revenue | $ 74.0 | $ 92.0 | $ 115.0 | $ 144.0 | $ 173.0 |
| Gross Profit | $ 20.0 | $ 33.2 | $ 45.5 | $ 60.2 | $ 75.3 |
| Adjusted EBITDA[1] | $ (10.5) | $ (2.7) | $ 3.1 | $ 8.8 | $ 19.0 |

Desktop Metal:

| (USD in millions) | Forecast Year Ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2021E | 2022E | 2023E | 2024E | 2025E |
| Revenue | $ 100.7 | $ 206.3 | $ 355.3 | $ 576.8 | $ 899.8 |
| Gross Profit | $ 26.5 | $ 72.4 | $ 142.6 | $ 264.2 | $ 432.8 |
| Adjusted EBITDA[(1)] | $ (79.2) | $ (54.4) | $ 6.7 | $ 118.9 | $ 277.8 |

58.    With respect to Stifel's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the rationale and basis underlying the inputs and assumptions used to value ExOne, Desktop Metal, and the pro-forma combined company, including the basis for using a discount rate range of 11.5% to 17.5% and terminal Revenue multiples of 4.0x to 6.0x to value Desktop Metal and the combined company but a discount rate range of 11.5% to 13.5% and terminal Revenue multiples of 3.0x to 5.0x to value ExOne.

59.    This information is especially material to ExOne's public investors because, the summary of the Discounted Cash Flow Analysis in the Registration Statement actually indicates Stifel was skeptical of Desktop Metal's projections and apparently adjusted the high end of the Desktop Metal discount rate upwards as a result:

> The assumptions for the CAPM were based on a comparable company capital structure adjusted for a small-cap size premium. ***Stifel determined this range was appropriate based on its professional judgement and experience and the significant difference between management and street estimates***.

Registration Statement, 93.

60.    It is unlikely, however, that the higher discount rate fairly accounted for how aggressive Desktop Metal's projections were, especially in light of the fact that: (i) Stifel did not adjust the *low-end* of the discount range, and (ii) Stifel not only still used the 2025 Revenue projection but also applied a higher terminal multiple range to that projection than Stifel applied to ExOne's terminal revenue projection.

61.    The Registration Statement, thus, omits critical information and explanation regarding how their adjustments fully accounted for Desktop Metal's overly aggressive projections.

62.    If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest.  The question is not simply whether there is a

duty to speak, but also whether there may be liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).    Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information.    Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

63.    In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

64.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

66.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

67.    The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

68.    Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

69.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

70.    The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all

of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

71.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

72.     The Company is also deemed negligent as a result of the Individual Defendants'

negligence in preparing and reviewing the Registration Statement.

73.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

Case 2:21-cv-01302-CCW   Document 1   Filed 09/29/21   Page 22 of 23

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

78.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

79.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

81.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the

Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: September 29, 2021                    LAW OFFICE OF ALFRED G. YATES,
                                             JR., P.C.

                                    By:   */s/ Alfred G. Yates, Jr.*
                                          Alfred G. Yates, Jr. (PA17419)
                                          Gerald L. Rutledge (PA62027)
                                          1575 McFarland Road, Suite 305
                                          Pittsburgh, PA 15216
                                          Tel: (412) 391-5164
                                          Fax: (412) 471-1033
                                          Email: yateslaw@aol.com

                                          *Attorneys for Plaintiff*


**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
Shpetim Ademi
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
       sademi@ademilaw.com

*Attorneys for Plaintiff*